My name is Jim Park. I'm here on behalf of defendant appellant Anthony Swint. I'd like to reserve 90 seconds for rebuttal. When I started reviewing this case for appeal, the thought that crossed my mind first was I wish the cooler heads would have prevailed and we would not even have this case. Unfortunately, people lost their cool in many ways, many parties. When Mr. Swint went to Grand Canyon to remove a tractor trailer from the Grand Canyon Village area, he encountered difficulties in a very narrow area that posed certain restrictive conditions for moving a vehicle out. And there was some frustration on his part. There was a frustration on a project manager's part, Mr. Relahan. And then Mr. Relahan, when he couldn't control or get Mr. Swint to cooperate, he called in law enforcement. And when law enforcement arrives, this Officer JC, the named victim in the first count, he gets there and he admits during trial that he did not treat Mr. Swint very politely. Or, and he had that Mr. Swint had initially complied with his orders, gave him his paperwork to show that they were in order. And Officer JC had basically ordered Mr. Swint in and out of the cab. Basically, he was treated like a little boy at times. So he had essentially too much testosterone going on. And eventually, Officer DR, the named defendant, named victim in count, arrives at the scene. And with the combined two officers, Officer DR gets involved by asking for the same thing again. Asking for the registration paperwork for the truck. It just gets very frustrating for Mr. Swint. His frustration level is rising. I'm sure the officers are frustrated too because Mr. Swint is not exactly following all the orders of the law enforcement. Once they decide to arrest Mr. Swint, they put the handcuffs on him. After they order him out of his truck cab. And they start escorting him. And that's where the struggles happen. The first struggle happens when Officer DR shoves Mr. Swint into the front of the truck in the grill section to, what he said was to gain control of Mr. Swint. Because he felt Mr. Swint was resisting arrest at this point. At trial, the other evidence came out that there was some struggle afterwards near the patrol car when they were trying to put Mr. Swint into the patrol car. And that's where the count too stems from. That one of the Officer DR claimed that Mr. Swint had kicked at him. Other witnesses did not see that kick. But nevertheless, the jury found that. But the jury, you know, you're making I think a pretty good jury argument. But the jury heard all the evidence and saw the videotapes and they convicted your client. Correct. So at this point, we draw. And that's what happens is the other evidence that came out about was about the use of force. And particularly as to count one, that Officer JC suffered a cut to the webbing of his left hand where Mr. Swint bit him. And testimony came out that Mr. Swint admitted to Agent Smith that he did bite Officer JC in the webbing of the area. Additionally, the testimony came out that Officer JC, that Mr. Swint claimed that Officer JC stuck his finger inside his mouth and. You know, I looked at the videotape of that second piece. That Exhibit 4? Is that what you're talking about? At the booking, the booking part. And it looked pretty clear that Mr. Swint had essentially taken a swing at the officer before this bite thing happened. I believe Mr. Swint was still in handcuffs. I don't know if there was actually a swing. Well, then he butted him or something, but he seemed to be the aggressor. Is that not right? I looked at the video several times. I looked at the Exhibit 4 video. And it's – I don't see it that way. It's an impression for the jury to decide how. Well, but if they thought that, then there wouldn't be any – I mean, the main issues here, as I understand it, are self-defense, which we haven't gotten to yet, are the self-defense instruction in the 404b. Correct. The 404b seems to me to be a problem, a legitimate problem. But then there's a harmless error problem. And as to the self-defense, though, if he was the aggressor, then there wouldn't need to be any self-defense instruction, right? I would disagree. First of all, I think that's a determination for the jury to make. But secondly, the officer, J.C., testified that there would be no reason whatsoever, any legitimate reason to stick your hand into a defendant's – to arrest these mobsters. Well, he said he didn't do it. He didn't do it, but he said there were also – because there would be no reason to do it, because it would not be part of your training. Well, what happens if he did? It would clearly go beyond a normal law enforcement use of restraints or force at this point. Oh, I don't know. I mean, if you're struggling in this thing and you accidentally put your hand in a guy's mouth, I don't understand what the – Well, he never – he said that he didn't do it. He said he didn't do it. And your client didn't testify. He didn't testify, but his statements came in that the finger was stuck in his mouth or, you know, messing around with his mouth, you know, trying to, as one of the officers described, it was disgusting. But if he was, in fact, the aggressor and they were struggling, then that could happen, right? It's a possibility. It also seems somewhat physically impossible to bite somebody here if they stick your fingers in their mouth. I thought about that, except when you can – you can actually stick your thumb inside between the teeth and the lip, and then you would get the bite on the webbing. Why would they – I noticed that they were wearing gloves. Why would they deliberately put their finger in somebody's mouth? I mean, one of the things that dentists and police officers are quite concerned about is infections from bodily fluids. So, I mean, that's why they wear gloves, one reason. So why would a police officer, in attempting to seduce somebody in those circumstances, deliberately stick his finger into the guy's mouth? As a tactic. As a tactic, you would – I think that was the statement Officer J.C. Basie said, there would be no tactical reason to do it. But that's where you get excessive forces. It's happened, even though there's no tactical reason to hit people over the baton, but you see that happening. Well, yeah, but that's an external blow that the law and the police training have come around to say, no, you can't do that. But I'm not aware of any training that suggests that under any circumstance that you get an advantage over a suspect by sticking your finger in somebody's mouth and you bite. Kind of counterintuitive. I think I agree with your statement on that, that there would be no tactical reason, there would be no legitimate law enforcement reason. I think that's why. But he did it anyway. He did it anyway. And that's why, because he did it, it shows that a natural reflex for a person being arrested, when somebody sticks your – something you're trying to stick your thumb or your finger into the mouth and you bit him, you bite that, that's a reasonable use of force. What's the legal issue that we're discussing here? Was there enough evidence for a defendant to get a jury charge of self-defense? And I'm not right that as a legal matter, if Mr. Swint was the aggressor in this incident, that he doesn't get a self-defense instruction, even if the officer stuck his finger in his mouth. Assuming that you are the aggressor and that the officer stuck his finger in and you bit it and you don't get a self-defense, even if you are the aggressor, you still can have a reasonable use of force later. Because here's the situation. You shove somebody, hypothetical, you are the aggressor, the other person comes back with your knife, you start running away or start to disengage, they keep coming at you. Well, but he wasn't running anyway. He was in a corner of a room. He was in a corner of a room. Well, he wasn't disengaging at all. I mean, I didn't – until they got him subdued. I mean, I watched the video. I mean, I don't see it that way. So, I mean, the question is did the district court err in denying the self-defense instruction? I think the district court said he's the aggressor. I don't see any evidence that supports self-defense. And I think what you need to get the destruction, though, is a pretty low standard. I mean, even if it's disputable, even if it's not believable, but what you have was the evidence was out there that the finger was stuck in his mouth, he bit it in response. Can I – speaking of – you're going to run out of time, and I think we got that point. On the 404B, you put self-defense in as an issue. So the court led in the prior. Why doesn't that prior go to the issue of what his actual intent was? Well, I think the intent goes to the question is I think Betancourt is pretty more of a point that had to deal with the law enforcement contact. And the intent when you're resisting arrest or when you're assaulting a Federal officer, it's not an intent that's formed over time, but it's just more of a spontaneous act. Yes, but you put it at issue. And once you put someone's intent at issue, isn't it the defense of the prosecution to say, no, this was no mistake, no accident. He intended to, in the prior case, he intended to do what he did, and that's what he did in this case. It's his way of – it's not just his character. It's a behavior on its part. Yes, to a certain extent, that is correct. However, you still have to do the 403 analysis. Well, then that's an abuse of discretion standard, and the court did that. That's a much tougher standard from a defense perspective. Okay. But here, one of the things that I have a troubling aspect of that about the 404 analysis, though, however, Judge, is this. The defense was noticed as a self-defense. The expert was precluded from testifying about the self-defense aspect of it, only about the police procedures. If the issue of getting that in is to rebut the self-defense, then you, as a government, then you argue against self-defense. I mean, you got it in to argue self-defense is relevant, but then you're going to deny the defendant a right to have a jury instruction on self-defense. That doesn't seem to be fair. Thank you, Counsel. Ms. Green. Good morning. May it please the Court. My name is Jennifer Green. I'm an assistant United States attorney for the District of Arizona. I represent the United States. Responding first to Your Honors, Judge Berzon's comment about the aggressor in the excessive force jury instruction, simply, the defense doesn't get past the Uranic case or Acosta-Sierra in this case because the video evidence showed the defendant was the aggressor as to count one. Well, I looked at the video, too, and everything's blocked. So he's up against the wall. To say he's the aggressor, you can't see what the officers in the cell are doing to provoke the reaction. So to say it's clear, I think, overstates the probative clarity, if you will, of the video. Now, one can draw the circumstantial conclusions in all of the aftermath behavior, but I wouldn't say it's clear. I appreciate Your Honors viewing the video and noting that some of it certainly is obstructed. But the government believes the district court did not abuse its discretion in denying. I didn't say that. I said it wasn't clear. Yes, Your Honor. You're right. So we are agreed on that. We are agreed on it. It's not crystal clear. But the government maintains when the court used that video and heard the testimony of both Officer D.R. and Officer J.C. and Officer K.W. when they were walking him into that small booking facility, it's also his actions immediately prior to what the court sees him wildly thrashing about in the corner and screaming and yelling and using volatile language with the officers.  And then just trying to get in him to book him for the disorderly conduct way back near the Coulter Hall area is all they really needed to do. And he's still resisting with two officers right there, ultimately three, one with a taser pointed at him. He still won't stop resisting. And even with a taser point at it, looks at the woman, the female ranger who has their taser out and says, Tase me, bitch. Shoot me. Shoot me. And he won't stop being aggressive. He ultimately bites Officer J.C., as we all know. Officer J.C., the reactions immediately after the bite also evidence the fact that he was the aggressor. The court can see in the video, as soon as he bites Officer J.C. and Officer J.C. exclaims, you bit me, and runs away to get treatment, he's still not done then. This is a defendant who's so angry and so volatile that he rips off that spit hood that they put over his head within about two seconds. And then he lunges at Officer D.R., who's just trying to shut that door to keep him inside and finally put him into custody. And then, of course, the court knows the record shows all the awful statements he made after and how disrespectful he was and, frankly, just flipped with the officers when they were trying to get his information during the booking process. But the government maintains that the district court did not abuse its discretion in denying itself the excessive force, the non-model excessive force instruction when it considered the argument of the parties and determined that the defendant didn't make a prima facie case. But ultimately, I think the defense can't get past Urena and Acosta Sierra because the defendant was the aggressor. Could you address the 404? Yes, Your Honor. The issue of introducing the prior? Yes, Your Honor. And how that relates to Bettencourt? Sure. The district court did not abuse its discretion when it had briefing on the issue, held argument, and then went through the four-part test finding. Yes, but his – I couldn't – from what he said, he was essentially saying this is his character. He loses it and he assaults police officers. There was nothing else. There was no intent or knowledge to be had. I don't understand. It seems like a classic 404B problem. I understand the Court's concern. The district court, after hearing argument and – I understand that. But first of all, I don't – I don't – is it so that the 404B decision – I don't think it is – is an abuse of discretion standard? The 403 issue is an abuse of discretion standard. But the question of whether this is admissible under 404B doesn't seem to me to be an abuse of discretion question. It's a legal question. The government believes it is an abuse of discretion standard under Bustle and that the district court's abuse of discretion on an evidentiary matter that doesn't rise to the level of a constitutional error will warrant reversal only if it's more likely than not that it affected the verdict. I understand that part. I was trying to deal with the first part, i.e., the question of whether there was a 404B violation. Sure. And the government believes there wasn't. Going to what the district court found, the district court admitted the 404B evidence under intent, lack of mistake, and because the defense noticed the defense of self-defense. What's the mistake and what's the lack of intent? Sure. Just as the – It wasn't arguing a lack of intent and it wasn't arguing a mistake. The defense squarely put intent at issue in this case. Well, intent only in the self-defense sense. Well, the – even in closing argument, Your Honor, the defense still said, did he even – did the defendant even bite Officer Culley? All right. Well, that's not intent. That's – that's – did it happen? Well, did it happen? Did the – and then also with the – all the questions about the fingers around the mouth, was this just a mistake that the defendant bit Officer Culley in the middle of a struggle, or was this really something where the defendant intended to assault him? That was an issue in this case, Your Honor. There was a lot of questions about how Officer Culley – The prior had nothing to do with biting anybody, right? I'm sorry, could you – The prior had nothing to do with biting anybody. It didn't have biting. It was resisting officers to the point where they couldn't gain control. So all it was about was he was – he was pro-resist officers. I mean, that's – that's the only sense in which it's pertinent. And, of course, I mean, the problem with 404b and issues is that it always is pertinent or relevant in a common-sense sort of a way. One does make decisions in daily life about how – that somebody is likely to have done this because he's done it before. But for policy reasons, we don't allow that. And that's all that's going on here. The district court distinguished Betancourt and said the facts are more like the Eighth Circuit Burke and Steele cases and less like Betancourt. And as to Judge Fischer's comment about Betancourt earlier, could you distinguish it, the government believes that one of the reasons the district court distinguished Betancourt and didn't preclude the prior was because Betancourt was so different from Steele. The Betancourt case was – involved a prior arrest that was later expunged. And that court found that there was no rational connection between the assaults. The 2000 – that's true. There is a rational connection. There is always a rational connection when you're dealing with 404b evidence, but we nonetheless don't allow it when it's only about character or propensity. But it was about – in this case, the case was almost on all fours with the 2004 case except for the bite part. You had a defendant who was on the phone who was being told to get out of an area. Right. But, I mean, basically it doesn't boil down to the inference that's impermissible in the law. He did it before. He'll do it again. Propensity. I mean, it's – it puzzles me in an assault case that you would use 404b to show lack of, you know, mistake. Well, the Ninth Circuit has approved post-Betancourt the use of assaults in United States. That was not submitted in my brief, but the Ninth Circuit has approved of assaults post-Betancourt. And, certainly, the analysis is extremely similar to the Steele and Burt cases because they were assault on a federal officer cases. Furthermore, the district court used a limiting instruction both at the time, right before Officer Merleau testified from East Point Police Department, and at the end of the case. And the district court went through each prong, materiality, remoteness, sufficiency, and similarity, and then conducted a 403 analysis and found this is similar enough. It does go to the three reasons that it admitted the evidence. And I have to say that I'm not sure that's the case. Ginsburg. If this is allowed, presumably if somebody is being tried for murder, you can put in the fact that they were convicted of murder 25 years ago because it's a murder. What's the difference? Well, I think it depends if the circumstances are similar, beyond the fact that it was just a murder. I think you would have to look at the remoteness by itself might seem like it would not be. But the inference you're asking to draw is still just a propensity inference. That's all it is. It's nothing else. Even Betancourt found that if the – if the – if a defendant showed a turbulent motive. I'd rather you talk about the issues rather than particular cases in this instance. And whatever the case, I want to know what's the difference between a propensity inference and this kind of admission in this circumstance. If you call this intent and knowledge, what isn't intent and knowledge? When this defendant shows a turbulent and quarrelsome disposition against police officers. Okay. So that's it. You just said it. It's a disposition. The prior cases have held that that is the instance in which it would be admissible, and that's what the district court did in this case. So the government respectfully disagrees it's for more than just propensity, bad guy then, bad guy now. It's for intent and lack of mistake, because we still have the – You just said that it's for propensity. That's what it's for. I apologize if I misspoke. I – I – what I meant to say was it's more than – it's not for propensity. It's for intent, for lack of mistake, and for self-defense, which is what the court had in front of it when it made the pretrial ruling, admitted it, finding it met all four prongs in the 403 analysis, and ultimately giving a limiting instruction to limit the danger of unfair prejudice. Thank you, counsel. Thank you. We'll give you a minute for rebuttal. I wanted to follow up on Judge Fischer's view about the video. The – Judge Berzahn had talked about Mr. Swint being the aggressor, but when during cross-examination, Officer J.C. about the video, he does admit from that view that it does not look like Mr. Swint was – initiated the struggle. It's in the excerpt 75 through 77 where the Officer J.C. admits that the video is not that clear-cut. Thank you. Okay. Thank you both for your arguments. The case will be submitted for decision.
judges: Thomas, Fisher, Berzon